UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | | |
|---|---|---|
| **DISCOVER BANK, et al.,** | * | |
| **Plaintiffs,** | * | |
| v. | * | Civil Action No. _____ |
| **BETTY E. VADEN** | * | |
| **Defendant.** | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S PETITION TO
COMPEL ARBITRATION AND ENJOIN DEFENDANT'S PROSECUTION
OF HER STATE COURT CLASS ACTION COUNTERCLAIM**

Plaintiffs Discover Bank and Discover Financial Services, Inc. (collectively, "Discover") hereby file this Memorandum of Law in support of their Complaint in the Nature of a Petition to Compel Arbitration and Enjoin Defendant's Prosecution of the individual claims in her State Court Class Action Counterclaim.

**I.      Introduction**

Plaintiff Discover Bank, a federally-insured bank chartered in and organized under the laws of Delaware, issued Defendant Betty E. Vaden ("Defendant" or "Ms. Vaden") a Discover credit card at her request. Plaintiff Discover Financial Services, Inc. is the servicing affiliate of Discover Bank. Defendant and Discover are bound by a broad arbitration agreement contained in the Discover Cardmember Agreement which sets forth the terms and conditions governing Ms. Vaden's credit card account. The arbitration agreement grants each party the option of requiring the arbitration of any claims brought by the other party in court.

On or about June 23, 2003, Discover instituted suit against Ms. Vaden in Maryland state court for the nonpayment of over $10,000 which was past due on Ms. Vaden's credit card account. In response to that suit, Ms. Vaden filed her "Class Action Counterclaim" (the "Counterclaim") against Discover. The first three counts of the Counterclaim concern the finance charges, interest and late fees charged by Discover in alleged violation of Md. Code Ann., Com. Law II §§ 12-506(a)(6), 12-506(a)(5) and 12-506.2. The remaining counts of the Counterclaim allege breach of contract premised on those same finance charges, interest and late fees and also contend that Discover engaged in "unfair and deceptive trade practices" in connection with the extension of credit by charging the finance charges, interest and late fees at issue.

Even if Defendant's allegations are true, which they are not, and even if the facts alleged in the Counterclaim constitute a violation of the cited statutes or state a claim under the applicable laws, which they do not, Defendant cannot maintain her Counterclaim in court, but instead must individually pursue her claims in arbitration. The Cardmember Agreement contains a broad arbitration agreement requiring Defendant's claims to be submitted to arbitration. Specifically, the arbitration agreement broadly provides for the arbitration of "any past, present or future claim or dispute (whether based upon contract, tort, statute, common law or equity) between you and us arising from or relating to your Account, any prior account you have had with us, your application, [or] the relationships which result from your Account." All of Defendant's claims clearly arise "from or relate to" her Account or "the relationships which result from your Account." All of Defendant's claims are within the broad scope of this arbitration agreement.

Additionally, this Court should enjoin Defendant's litigation of her state court Counterclaim because any order entered by this Court requiring Defendant to arbitrate her claims will be rendered meaningless if she continues to litigate her Counterclaim in state court. Under well settled law, this

Court should enter such an injunction in order to protect its judgment that this matter proceed to arbitration.

## II.  The Facts

### A.  Background.

In or about October 1990, Discover opened an account for Ms. Vaden in response to Ms. Vaden's application for a Discover credit card. Verified Complaint at ¶ 11. Discover then issued and mailed Ms. Vaden a Discover Card along with a Fulfillment Kit that included a copy of the Cardmember Agreement.[1] Id.

Since that time, Ms. Vaden and Discover have been parties to the Discover Cardmember Agreement, which sets forth the terms and conditions governing the relationship between Discover and each cardmember. Id. at ¶ 12 The Cardmember Agreement provided, among other things, that Ms. Vaden accepted the terms of the Agreement by using her credit card:

> "**ACCEPTANCE OF AGREEMENT.** The use of your Account or the Card by you or anyone whom you authorize or permit to use the Account or the Card means you accept this Agreement."

Id. at ¶ 12.

Ms. Vaden accepted the Cardmember Agreement by not rejecting it in accordance with its terms and by using the Card continuously from 1990 to 2001 when her privileges were suspended for non-payment. Id. at ¶ 13.

### B.  The Allegations of Defendant's Class Action Counterclaim.

---

[1]  As part of the regular course of its business, Discover maintains records of the accounts of those individuals who have a Discover Card credit card account ("Cardmembers"). Verified Complaint at ¶ 10. The terms and conditions that govern the relationship between Discover and its Cardmembers are set forth in a written agreement (the "Cardmember Agreement"). Id. at ¶ 10.

On or about June 23, 2003, Discover instituted suit against Ms. Vaden in the District Court of Maryland for Baltimore City. Verified Complaint at ¶ 30. Discover sought repayment of $10,610,74 which was past due on Ms. Vaden's credit card account. Id. As Ms. Vaden requested a jury trial, the matter was removed to the Circuit Court for Baltimore City, Maryland. Id. at ¶ 31.

On or about October 20, 2003, Ms. Vaden filed her Counterclaim against Discover. Id. at ¶ 32. The first three counts of the Counterclaim concern the finance charges, interest and late fees charged by Discover in alleged violation of Md. Code Ann., Com. Law II §§ 12-506(a)(6), 12-506(a)(5) and 12-506.2. In her first count, Ms. Vaden alleges that Discover "illegally assessed both finance charges and late fees, concurrently, against the open end accounts of Vaden and the putative Class Members" and "pursuant to Md. Code Ann., Comm. Law II § 12-506(a)(6)," Discover "could only assess either a finance charge or a late fee, but not both against its customers." Counterclaim at ¶¶ 43-44.

Ms. Vaden contends in her second count that Discover "illegally charged compound interest and compound finance charges against the open end accounts of Vaden and the putative Class Members" and "pursuant to Md. Code Ann., Com. Law II § 12-506(a)(5)," Discover "could not charge compound interest charges against its customers." Counterclaim at ¶¶ 48-49.

According to Ms. Vaden's third count, Discover "increased the existing interest rates assessed to the open end accounts of its customers" and "pursuant to Md. Code Ann., Com. Law II § 12-506.2" Discover "could not apply the newly increased interest rate to the pre-existing account balances of its customers." Counterclaim at ¶¶ 53, 55. The Counterclaim's remaining counts purport to allege claims for breach of contract and for deceptive trade practices in connection with these charges and fees. Counterclaim at ¶¶ 57-96.

C.     **The Parties' Arbitration Agreement.**

As authorized by the "Change of Terms" provision of the Cardmember Agreement, and in accordance with Delaware banking law, 5 Del. C. §952, beginning in July 1999 and continuing through August 1999, a Notice of Amendment for changes known internally at Discover as "Terms Level 11" (the "1999 Notice of Amendment") was inserted into and mailed with the billing statements of all Discover cardmembers -- including Ms. Vaden -- who had open accounts and were receiving statements. Verified Complaint at ¶ 18. Discover's records show that on or about July 26, 1999, Discover mailed to Ms. Vaden a copy of the 1999 Notice of Amendment with her July billing statement. Id. at ¶ 19.

The 1999 Notice of Amendment, among other things, added an arbitration agreement to the Cardmember Agreement. The 1999 Notice of Amendment stated:

> "**NOTICE OF AMENDMENT TO DISCOVER CARDMEMBER AGREEMENT:** This notice informs you of changes to your current Discover Cardmember Agreement. Please note the effective date of the changes shown below and retain this notice for your records - WE ARE ADDING A NEW ARBITRATION SECTION WHICH PROVIDES THAT IN THE EVENT YOU OR WE ELECT TO RESOLVE ANY CLAIM OR DISPUTE BETWEEN US BY ARBITRATION, NEITHER YOU NOR WE SHALL HAVE THE RIGHT TO LITIGATE THAT CLAIM IN COURT OR TO HAVE A JURY TRIAL ON THAT CLAIM. THIS ARBITRATION SECTION WILL NOT APPLY TO LAWSUITS FILED BEFORE THE EFFECTIVE DATE."

Id. at ¶ 20.

The 1999 Notice of Amendment set forth the arbitration agreement that was being added to the Cardmember Agreement. That arbitration agreement provides, in relevant part, for the arbitration of all claims and disputes at the option of either party:

> "**ARBITRATION. WE ARE ADDING A NEW SECTION TO READ AS FOLLOWS: ARBITRATION OF DISPUTES.** In the event of any past, present or future claim or dispute (whether based upon contract, tort, statute, common law or equity) between you and us arising from or relating to your Account, any prior account you

> have had with us, your application, the relationships which result from your Account or the enforceability or scope of this arbitration provision, of the Agreement or of any prior agreement, you or we may elect to resolve the claim or dispute by binding arbitration.
>
> IF EITHER YOU OR WE ELECT ARBITRATION, NEITHER YOU NOR WE SHALL HAVE THE RIGHT TO LITIGATE THAT CLAIM IN COURT OR TO HAVE A JURY TRIAL ON THAT CLAIM. PRE-HEARING DISCOVERY RIGHTS AND POST-HEARING APPEAL RIGHTS WILL BE LIMITED. NEITHER YOU NOR WE SHALL BE ENTITLED TO JOIN OR CONSOLIDATE CLAIMS IN ARBITRATION BY OR AGAINST OTHER CARDMEMBERS WITH RESPECT TO OTHER ACCOUNTS, OR ARBITRATE ANY CLAIM AS A REPRESENTATIVE OR MEMBER OF A CLASS OR IN A PRIVATE ATTORNEY GENERAL CAPACITY."
> Your Account involves interstate commerce, and this provision shall be governed by the Federal Arbitration Act (FAA) ....

Id. at ¶ 21.

Even if the parties opt to litigate a claim in court, the arbitration agreement provides that the parties may elect to arbitrate any new claims: "Even if all parties have opted to litigate a claim in court, you or we may elect arbitration with respect to any claim made by a new party or any new claims later asserted in that lawsuit, and nothing undertaken therein shall constitute a waiver of any rights under this arbitration provision." The arbitration agreement broadly applies to "our parent corporations, subsidiaries, affiliates (including, without limitation, Discover Financial Services, Inc.), predecessors, successors, assigns, as well as the officers, directors and employees of each of these entities." Id. at ¶ 25.

The 1999 Notice of Amendment concluded by reminding Cardmembers that the failure to opt out of the change in terms before it went into effect, or the use of their Discover Card after the effective date, would constitute acceptance of the change in terms as described in the 1999 Notice of Amendment, including the "Arbitration of Disputes" provision. Id. at ¶ 26. At no time has Discover ever received from Ms. Vaden any notification – written or otherwise – that she did not agree with

or wished to opt-out of the change of terms contained in the 1999 Notice of Amendment, which included the arbitration agreement. Id. at ¶ 28. Moreover, Ms. Vaden continued to use her Discover Card to make purchases after October 1, 1999, when the arbitration agreement became effective. Id.

The arbitration agreement contained in the Cardmember Agreement provides for the arbitration of "any past, present or future claim or dispute (whether based upon contract, tort, statute, common law or equity) between you and us arising from or relating to your Account, any prior account you have had with us, your application, [or] the relationships which result from your Account." All of Defendant's claims clearly arise "from or relate to" her Account or "the relationships which result from your Account." By its express terms, claims against Discover Financial Services, Inc. also are within the scope of the arbitration agreement. Accordingly, for the reasons explained at greater length below, the Court should grant the relief requested in the Verified Complaint.

## III. Argument

### A. The Federal Arbitration Act Applies.

The Federal Arbitration Act (the "FAA" or the "Act") provides that a written arbitration provision contained in a "contract evidencing a transaction involving commerce. . . shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Act defines "commerce" as "commerce among the several states." 9 U.S.C. § 1. "[T]he word 'involving'. . . signals an intent to exercise Congress's commerce power to the full," and the phrase "'evidencing a transaction' mean[s] only that the transaction. . .turn[s] out, in fact, to have involved interstate commerce." Allied-Bruce Terminix Companies v. Dobson, 513 U.S. 265, 276, 277 (1995)(emphasis in original). The Supreme Court most recently

emphasized the broad reach of the FAA: "We have interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce' – words of art that ordinarily signal the broadest possible exercise of Congress' Commerce Clause power." Citizens Bank v. Alafabco, Inc., 123 S.Ct. 2037, 2040 (2003).

The transaction at issue in this case meets the "commerce" requirement for two reasons. First, Defendant's credit card transactions with Discover clearly constitute interstate commerce. Defendant is a resident of Maryland. Verified Complaint at ¶ 4. Discover Financial Services, Inc. is a Delaware corporation with its principal place of business in Illinois while Discover Bank is a Delaware bank chartered and organized under the laws of the State of Delaware. Id. at ¶¶ 1,2.

Second, the arbitration agreement also provides that "[y]our Account involves interstate commerce, and this provision shall be governed by the Federal Arbitration Act." Verified Complaint at ¶ 21. This constitutes additional compelling evidence that the FAA's interstate commerce requirement has been satisfied. Staples v. The Money Tree, Inc., 936 F. Supp. 856, 858 (M.D. Ala. 1996); Thomas O'Connor & Co. v. Ins. Co. of North America, 697 F. Supp. 563, 566 (D. Mass. 1988); see also Volt Info. Sciences, Inc. v. Bd. of Trustees, 489 U.S. 468, 479 (1989) (courts must "rigorously enforce [arbitration] agreements according to their terms."). Accordingly, the transaction at issue in this case was a transaction "involving commerce" within the meaning of the Act and the Act applies to this action.

### B. Defendant's Claims Fall Within The Broad Scope of the Parties' Arbitration Agreement.

The FAA specifically provides that arbitration agreements are enforceable:

> A written provision in any maritime transaction or a contract
> evidencing a transaction involving commerce to settle by arbitration
> a controversy thereafter arising out of such contract or transaction, or
> the refusal to perform the whole or any part thereof, or any
> agreement in writing to submit to arbitration an existing controversy

> arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The FAA further provides that the courts should order the parties to proceed to arbitration upon concluding that a valid arbitration agreement exists. 9 U.S.C. § 4.

As repeatedly emphasized by the Supreme Court, federal law strongly favors the arbitration of disputes and the enforcement of arbitration agreements. Circuit City Stores, Inc. v. Adams, 121 S. Ct. 1302 (2001); Randolph v. Green Tree Financial Corp., 121 S. Ct. 513, 521 (2000); First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 945 (1995); Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). Congress specifically enacted the FAA to "revers[e] centuries of judicial hostility to arbitration agreements" by "plac[ing] arbitration agreements upon the same footing as other contracts." Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 225-26 (1987) (citations omitted).

The Supreme Court has stressed that arbitration is also favored in consumer disputes: "We agree that Congress, when enacting this law [i.e. the FAA], had the needs of consumers, as well as others, in mind . . .[T]he Act, by avoiding the delay and expense of litigation, will appeal to big business and little business alike, corporate interests [and] individuals. Indeed, arbitration's advantages often would seem helpful to individuals, say, complaining about a product, who need a less expensive alternative to litigation." Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. at 280 (citations omitted, brackets in original). Arbitration agreements remain favored and enforceable even in the face of an alleged disparity in the parties' bargaining power. Randolph, 121 S. Ct. at 522-23 (enforcing arbitration clause in dispute between consumer and lender); Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 32-33 (1991) (enforcing arbitration clause in dispute between employer and employee); Hill v. Gateway 2000, Inc., 105 F.3d 1147 (7th Cir.) (enforcing

arbitration clause in dispute between consumer and computer manufacturer), cert. denied, 522 U.S. 808 (1997); Harris v. Green Tree Financial Corp., 183 F.3d 173 (3d Cir. 1999) (enforcing arbitration clause in dispute between consumer and lender).

The Fourth Circuit recently dealt with the enforceability of arbitration agreements in Snowden v. Checkpoint Check Cashing, 290 F.3d 631 (4th Cir.), cert. denied, 123 S. Ct. 695 (2002). In Snowden, the plaintiff sued a short-term lender regarding twelve so-called "deferred deposit" transactions.[2] The last deferred deposit transaction included an arbitration agreement. The plaintiff brought a putative class action contending that the deferred deposit transactions were actually loans and that the service fee constituted usurious interest. Based on these allegations, the plaintiff alleged violations of RICO, the Maryland Consumer Protection Act and common law fraud. The defendant moved to compel arbitration. The Fourth Circuit concluded that arbitration had to be compelled. The Fourth Circuit rejected all of the plaintiff's arguments against arbitration, including her argument that arbitration violated public policy:

> Finally, we reject as meritless [plaintiff's] unsupported argument that forcing consumers like her to arbitrate consumer protection claims against companies like [defendant] is against public policy relating to consumer protection. Congress enacted the FAA in 1925 in order "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." [Plaintiff] has presented no authority or evidence establishing that the arbitral forum contemplated by the FAA and provided in the Arbitration Agreement is inconsistent with public policy relating to consumer protection. Indeed, we have recognized the arbitral forum specified by the Arbitration Agreement as one provided by a reputable arbitration organization. We also note that the Arbitration Agreement places no limitations upon the substantive remedies available to [plaintiff] in arbitration. In sum, we can discern no violation of public policy relating to consumer

---

[2]   "In a deferred deposit transaction, a customer tenders a check to the store that is cashed for a service fee with the understanding that the check will not be negotiated until some later, agreed upon time." 290 F.3d at 633.

protection by requiring [plaintiff] to resolve her claims against [defendant] in the arbitral forum.

290 F.3d at 639 (emphasis added).[3]

When deciding whether a matter must be submitted to arbitration, the Court must determine whether the specific dispute falls within the substantive scope of the arbitration agreement. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626-28 (1985); Glass v. Kidder Peabody & Co., 114 F.3d 446, 453 (4th Cir. 1997). If the Court concludes that the matter falls within the scope of the arbitration clause, it must refer the matter to arbitration without reviewing the merits. Glass, 114 F.3d at 453; PaineWebber, Inc. v. Hartmann, 921 F.2d 507, 511 (3rd Cir. 1990).

"[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Memorial Hosp., 460 U.S. at 24-25; O'Neil v. Hilton Head Hosp., 115 F.3d 272, 273-74 (4th Cir. 1997). "[T]he heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration. A court should not deny a request to arbitrate an issue unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Drews Distrib., Inc. v. Silicon Gaming, Inc., 245 F.3d 347, 349-50 (4th Cir. 2001) (citations omitted). Indeed, as recently reaffirmed by the Supreme Court in Randolph, "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." Randolph, 121 S. Ct. at 522.

---

[3] Among the other arguments raised by the plaintiff and rejected by the Fourth Circuit were her arguments that the arbitration agreement was invalid because it barred class actions and was part of a contract void under state law. 290 F.3d at 636-38.

In determining whether a particular claim falls within the scope of the arbitration agreement, the Court's focus is on the factual underpinnings of the claim rather than the legal theories alleged in the complaint. Gregory v. Electro-Mechanical Corp., 83 F.3d 382, 384 (11th Cir. 1996); Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 846 (2d Cir. 1987); Chloe Z Fishing Co. v. Odyssey Re (London) Ltd., 109 F. Supp.2d 1236, 1256 (S.D. Cal. 2000). As the Seventh Circuit explained: "The touchstone of arbitrability in these circumstances is the relationship of the claim to the subject matter of the arbitration clause." Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Intern., 1 F.3d 639, 643 (7th Cir. 1993) (citation omitted).

Numerous courts have interpreted language in arbitration clauses similar to that in the present case to find that they had a broad reach. See, e.g., Drews Distrib., 245 F.3d at 350 (recognizing as "broad" an arbitration clause covering "any controversy or claim" related to an agreement); Kiefer Specialty Flooring, Inc. v. Tarkett, Inc., 174 F.3d 907, 909 (7th Cir. 1999) ("Similar types of arbitration provisions have been characterized as extremely broad and capable of expansive reach."); Am. Recovery Corp. v. Computerized Thermal Imaging, Inc., 96 F.3d 88, 93 (4th Cir. 1996) (holding that an arbitration clause that provided arbitration for any dispute that "ar[ose] out of or related to" the agreement was a broad clause, "capable of expansive reach"); Coors Brewing Co. v. Molson Breweries, 51 F.3d 1511 (10th Cir. 1995) (arbitration clause covering "any dispute arising in connection with the implementation, interpretation or enforcement of agreement" covered antitrust disputes); Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 1110, 1114 (3d Cir. 1993) (arbitration clause covering "all controversies" that may arise between signatories "broadly construed. . . to apply to all disputes between signatories").

Additionally, it is now well settled that all manner of statutory claims, like these brought by Defendant here, are subject to arbitration. Green Tree Financial Corp. v. Randolph, supra (federal

Truth in Lending Act ("TILA") claim held arbitrable); Shearson/American Express, supra (RICO claim held subject to arbitration); Snowden, supra (Fourth Circuit compelled arbitration of RICO, TILA and state law consumer protection claims); Sydnor v. Conseco Fin. Serv. Corp., 252 F.3d 302 (4th Cir. 2001) (state law consumer protection claims subject to arbitration); Bowen v. First Family Fin. Serv., 233 F.3d 1331 (11th Cir. 2000) (TILA claim subject to arbitration); Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 721-24 (9th Cir. 1999) (Sherman Act and Lanham Act claims subject to arbitration); Sagal v. First USA Bank, N.A., 69 F. Supp.2d 627 (D.Del. 1999) (consumer fraud act claims subject to arbitration), aff'd, 254 F.3d 1078 (3d Cir. 2001).

The parties' broad arbitration agreement requires the arbitration of "any past, present or future claim or dispute (whether based upon contract, tort, statute, common law or equity) between you and us arising from or relating to your Account, any prior account you have had with us, your application, [or] the relationships which result from your Account." All of Defendant's claims clearly arise "from or relate to" her Account or "the relationships which result from your Account." By its express terms, claims against Discover Financial Services, Inc. also are within the scope of the arbitration agreement.[4] Consequently, Defendant's claims are within the scope of the parties' arbitration agreement and are subject to arbitration.

Finally, only Defendant's individual claims should be compelled to arbitration as the arbitration agreement explicitly prohibits participation in a class action or in a class-wide arbitration either as a representative or a class member. Under well settled federal law, such a prohibition is valid and prevents the maintenance of this action as a class action in court or in arbitration. See,

---

[4] Courts repeatedly hold that where the express language of the arbitration agreement makes it applicable to a non-signatory such as Discover Financial Services, Inc., the non-signatory may invoke and enforce the arbitration agreement. See, e.g., Internat'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 416-18 (4th Cir. 2000); Gardner v. Ryan's, No. 01-00030, 2001 WL 1352113, at *1 & n.2 (W.D. Va. Oct. 31, 2001); Vigil v. Sears Nat'l Bank, 205 F. Supp.2d 566, 568 (E.D. La. 2002).

e.g., Snowden, 290 F.3d at 638; Randolph v. Green Tree Fin. Corp. 244 F.3d 814, 818 (11th Cir. 2001); Johnson v. West Suburban Bank, 225 F.3d 366, 368 & 377 n.4 (3d Cir. 2000), cert. denied, 531 U.S. 1145 (2001); Champ v. Siegel Trading Co., 55 F.3d 269, 274-75 (7th Cir. 1995); McCarthy v. Providential Corp., No. 94-0627, 1994 U.S. Dist. LEXIS 10122, at *25-26 (N.D. Cal. July 19, 1994), appeal dism'd, 122 F.3d 1242 (9th Cir. 1997), cert. denied, 525 U.S. 921 (1998). As one court within this Circuit stated: "A court cannot order class arbitration of claims unless the arbitration provision permits the maintenance of class actions." Adkins v. Labor Ready, 185 F. Supp.2d 628, 646 n.15 (S.D.W.Va. 2001).

> C. **Although Litigation Between The Parties Is Pending In State Court, This Court Should Determine Discover's Petition To Compel Arbitration And Enjoin Defendant From Prosecuting Her Class <u>Action Counterclaim In State Court</u>.**

It is well settled that although there is pending litigation in state court between the parties to an arbitration agreement, a District Court must resolve a petition to compel arbitration over which it has subject matter jurisdiction. Furthermore, because any order entered by this Court requiring Defendant to arbitrate her claims will be rendered meaningless if she is permitted to continue litigating her Counterclaim against Discover in the state court action, this Court also should enjoin Defendant from litigating her claims against Discover in state court.[5]

First, this action is authorized by both the FAA, 9 U.S.C. § 4, and the Supreme Court's holding in Moses H. Cone Memorial Hosp. In Moses H. Cone, a state court lawsuit had been commenced against several defendants. One of the defendants then commenced an independent action in federal court under the FAA seeking to compel arbitration. 460 U.S. at 7. The District

---

[5] If the Court issues such an injunction, Discover will agree to the stay of its state court action pending the conclusion of the parties' arbitration. Similarly, if the Court compels arbitration of the counterclaim, Discover will agree to arbitrate its state court lawsuit against Ms. Vaden as well.

Court stayed the federal proceeding in favor of the state court action. The Supreme Court reversed, calling the District Court's action "plainly erroneous." Id. at 22. The Supreme Court noted that "the relevant federal law requires piecemeal resolution when necessary to give effect to an arbitration agreement. Under the Arbitration Act, an arbitration agreement must be enforced. . ." Id. at 20. Since the Supreme Court's decision in Moses H. Cone, numerous federal courts have recognized that the FAA permits a party to bring suit in federal court under section 4 of the FAA, assuming an independent basis for federal jurisdiction, rather than, or in addition to, moving to compel arbitration in state court. See, e.g., Circuit City Stores, Inc. v. Najd, 294 F.3d 1104 (9th Cir. 2002) (affirming District Court's granting petition to compel arbitration which stayed state court action); Great Earth Cos. v. Simons, 288 F.3d 878, 888 (6th Cir. 2002) (same).

Similarly, in First Franklin Financial Corp. v. McCollum, 144 F.3d 1362 (11th Cir. 1998), a state court action was commenced against a financial institution and one of its employees. The financial institution filed a petition to compel arbitration in federal court. 144 F.3d at 1363. The District Court dismissed the petition in favor of the state court litigation. Id. Relying on Moses H. Cone, the Eleventh Circuit reversed, concluding that the District Court had jurisdiction and a "virtually unflagging obligation to exercise it." Id. at 1364. The Eleventh Circuit rejected the argument that the petition to compel risked piecemeal litigation: "The federal proceeding has only two possible outcomes: an order compelling arbitration, or an order refusing to compel arbitration and dismissing the petition. No piecemeal litigation of the merits can occur either way, and even if arbitration results, that is piecemeal litigation that the parties and federal policy have together made mandatory." Id. (citations omitted); accord Transouth Financial Corp. v. Bell, 149 F.3d 1292, 1295-96 (11th Cir. 1998) (District Court improperly abstained from deciding petition to compel arbitration where parallel proceeding was pending in state court); Snap-On Tools Corp. v. Mason,

18 F.3d 1261, 1267 (5th Cir. 1994) (federal court must decide petition to compel arbitration although parallel proceeding pending in state court).

The Fourth Circuit, and District Courts within the Fourth Circuit, also have held that a District Court must exercise jurisdiction over a petition to compel arbitration regardless of ongoing state proceedings. See Whiteside v. Teltech Corp., 940 F.2d 99, 102 (4th Cir. 1991); In re Mercury Constr. Corp., 656 F.2d 933, 946 (4th Cir.) (*en banc*), aff'd, 460 U.S. 1 (1983); Eastern Assoc. Coal Corp. v. Munson, 266 F. Supp.2d 479, 485 (N.D. W.Va. 2003). As the Fourth Circuit stated: "a federal district court has no right to stay the federal proceedings brought under the FAA even though a similar action between the parties was pending in state court." Whiteside, 940 F.2d at 102 (citation omitted). Accordingly, this Court must decide Discover's Petition to Compel Arbitration and should enter the appropriate injunction to effectuate any order compelling arbitration.

Second, the purpose of arbitration, under federal law, is the avoidance of costly and time consuming litigation on the merits. See, e.g., Apex Plumbing Supply, Inc. v. U.S. Supply Co., 142 F.3d 188, 193 (4th Cir. 1998); Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 700 (3d Cir. 1993); Morgan v. Smith Barney, Harris Upham & Co., 729 F.2d 1163, 1165 (8th Cir. 1984). If Defendant's litigation of her Counterclaim against Discover is not enjoined, the purpose of arbitration will be defeated because Discover will be forced to litigate claims that should only be decided in arbitration. For the very same reasons, this Court's Order compelling arbitration will be rendered meaningless.

As one court explained when it granted a motion to enjoin prosecution of a state court action after it had granted a motion to compel arbitration:

> This Court further finds that the policies embodied in the federal arbitration act militate against having ongoing state proceedings at the very time that those same claims are the subject of arbitration proceedings . . . this court concludes that the principle of judicial

> economy, the strong judicial policy expressed by the Supreme Court
> favoring arbitration, and the policies embodied in the federal
> arbitration act warrant, and even require, a stay of the [state] action.

A.L. Williams & Assocs. v. McMahon, 697 F. Supp. 488, 495 (N.D. Ga. 1988). Indeed, numerous other federal courts have similarly concluded that prosecution of state court action must be enjoined where a motion to compel arbitration has been granted. See Ultracashmere House, Ltd. v. Meyer, 664 F.2d 1176, 1181 & n.9 (11th Cir. 1981) (recognizing authority of federal courts to issue such injunction); Doctor's Assoc. v. Distajo, 870 F. Supp. 34, 36 (D. Conn. 1994), aff'd in part & rev'd in part on other grounds, 66 F.3d 438 (2d Cir. 1995); Snap-On Tools Corp. v. Vetter, 838 F. Supp. 468, 473 (D. Mont. 1993); McGuire, Cornwell & Blakey v. Grider, 765 F. Supp. 1048, 1052 (D. Col. 1991) ("Any further proceedings in state court on the arbitrable claims and disputes would be inconsistent with that order" compelling arbitration); H&M Charters, Inc. v. Reed, 757 F. Supp. 859, 864 (S.D. Ohio 1991) (court possesses authority to enjoin prosecution of state court action); Pervel Indus. v. TM Wallcovering, Inc., 675 F. Supp. 867, 869 (S.D.N.Y. 1987), aff'd, 871 F.2d 7 (2d Cir. 1989); Bache Halsey Stuart Shields, Inc. v. Moebius, 531 F. Supp. 75, 77 (E.D. Wis. 1982); Blount Bros. Corp. v. M.K. Steel, Inc., 524 F. Supp. 1037, 1039 (N.D. Ala. 1981).

Finally, an injunction in this case is not prohibited by the Anti-Injunction Act, 28 U.S.C. § 2283. Great Earth Cos., 288 F.3d at 893-94 ("the [District Court] has issued a final judgment finding that the arbitration clause is valid.... An injunction of the state proceedings is necessary to protect the final judgment of the district court on this issue."); TranSouth Fin. Corp., 149 F.3d at 1297 ("When a federal court has ordered arbitration, a stay of the state court action may be necessary to insure that the federal court has the opportunity to pass on the validity of the arbitration award."). Indeed, the Anti-Injunction Act expressly permits a federal court to issue an injunction

where necessary in aid of its jurisdiction or to protect or effectuate its judgments. That authorization plainly applies in the present case.

For example, in Specialty Bakeries, Inc. v. Robhal, Inc., 961 F. Supp. 822 (E.D. Pa. 1997), aff'd & modified, 129 F.3d 726 (3d Cir. 1997), the defendant commenced litigation in New Jersey state court against plaintiff for breach of the parties' franchise agreement. Although the franchise agreement contained an arbitration clause, the New Jersey Superior Court refused to stay the action pending arbitration. 961 F. Supp. at 826. Five days after the state court action was instituted, the plaintiff filed its petition to compel arbitration in federal court. Id. The District Court granted the petition to compel arbitration. Id. at 827. The District Court then enjoined the defendant from prosecuting its New Jersey state court action:

> the integrity of arbitration under the Federal Arbitration Act constitutes an important federal policy. We do not believe that a contracting party or a state court may act in any way to undercut that policy, where as here a federal court order compelling arbitration has been issued. A preliminary injunction, restraining [defendant] from proceeding in state court is necessary in aid of our jurisdiction so as to preserve the integrity of this arbitration process. Otherwise [defendant] can obtain full and complete injunctive relief and money damages in the state court, as it requests in its complaint there. Little or nothing would be left for the arbitrator.

Id. at 830. The Third Circuit affirmed the District Court's entry of an injunction, finding that it was not barred by the Anti-Injunction Act and concluding that the District Court "did not abuse its discretion" in entering the injunction. 129 F.3d at 727.

Accordingly, not only should the Court compel the arbitration of Defendant's claims, it should also enjoin her from prosecuting those claims in state court.

## IV.   Conclusion

For all of the foregoing reasons, Plaintiffs respectfully request that the Court enter an order directing that arbitration between Defendant and Plaintiffs proceed in the manner provided for in the

arbitration agreement; that the issues raised in Defendant's Counterclaim be determined by binding arbitration in accordance with the parties' arbitration agreement; that Defendant's claims proceed on an individual basis in arbitration; and that Defendant be restrained from taking any further action to prosecute her Counterclaim while the parties proceed to arbitration in accordance with the parties' arbitration agreement.

Respectfully submitted,

_/s/ Matthew Wagman_

Joseph W. Hovermill, Esquire, (Fed. Bar No. 22446)
Matthew T. Wagman, Esquire (Fed. Bar No. 26399)
John C. Celeste, Esquire (Fed. Bar No. 26810)
Miles & Stockbridge P.C.
10 Light Street
Baltimore, Maryland 21202
(410) 727-6464
(410) 385-3700 (facsimile)

Attorneys for Plaintiff/Counter Defendants,

Discover Financial Services, Inc.,
SVC Affiliate of Discover Bank,
f/k/a Greenwood Trust Co., a De
Chartered State Bank and Issuer
of the Discover Card

OF COUNSEL

Alan S. Kaplinsky
Martin C. Bryce, Jr.
Ballard Spahr Andrews & Ingersoll, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
(215) 665-8500

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12th day of November, 2003 a copy of the foregoing Memorandum of Law in Support of Plaintiffs' Petition to Compel Arbitration and Enjoin Defendant's Prosecution of Her State Court Class Action Counterclaim was sent via first-class mail, postage prepaid to:

>Betty E. Vaden
>4113 Kathland Avenue
>Baltimore, MD 21207

>*and via first class mail, postage pre-paid and electronic mail to:*

>John A. Mattingly, Jr.
>Baldwin, Briscoe & Mattingly, Chtd
>22335 Exploration Drive, Suite 2030
>Lexington Park, Maryland 20653

>Attorneys for Defendant/Counter Plaintiff

_____
Matthew T. Wagman