IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|                        |   |                          |
|------------------------|---|--------------------------|
|                        | * |                          |
| DISCOVER BANK, et al., |   |                          |
|                        | * |                          |
|     Plaintiffs, |   |                          |
| v.                     | * | CIVIL NO.: WDQ-03-3224   |
|                        |   |                          |
| BETTY E. VADEN,        | * |                          |
|                        |   |                          |
|     Defendant. | * |                          |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

MEMORANDUM OPINION AND ORDER

      Discover Bank and Discover Financial Services, Inc. ("DFS") (collectively, "Discover") moved to compel arbitration of Vaden's counterclaims under the Federal Arbitration Act ("FAA")[1]. By Memorandum Opinion and Order dated June 21, 2004 ("June 2004 Opinion"), this Court granted Discover's motion and stayed prosecution of Vaden's counterclaims pending arbitration. Vaden appealed to the United States Court of Appeals for the Fourth Circuit. *See Discover Bank v. Vaden*, 396 F.3d 366 (4th Cir. 2005). In her appeal, Vaden challenged the Court's subject matter jurisdiction. The case was vacated and remanded for the determination of whether subject matter jurisdiction exists. *Id*. at 373. If the Court found that jurisdiction existed, the Fourth Circuit ordered the Court to reexamine whether Vaden's counterclaims were subject to arbitration. *Id.* at 373 n.4.

---

[1]9 U.S.C. § 1 *et seq.* (2005).

1

Pending is Vaden's motion to dismiss for lack of subject matter jurisdiction. For the reasons discussed below, Vaden's motion to dismiss will be denied and Vaden's counterclaims will be stayed pending arbitration.

BACKGROUND

On June 23, 2003, DFS sued Vaden in the Circuit Court for Baltimore City, Maryland for nonpayment of over $10,000 that was past due on Vaden's credit card. *See* Mem. in Support of Pls.' Mot. to Compel at p. 2. DFS is the servicing affiliate of Discover Bank, a Delaware federally insured bank. *See* Verified Complaint at ¶2. Vaden then filed class action counterclaims against DFS. *See* Mem. in Support of Pls.' Mot. to Compel at p. 2. The counterclaims allege illegal assessment of finance charges, late fees, and interest rates and breach of contract in violation of Maryland law. *See* Counterclaim at ¶¶ 41, 47, 52, 58, 67, 75, 81, 93.

On November 12, 2003, Discover filed a petition with this Court to compel arbitration of Vaden's counterclaims.[2] *See* Verified Complaint. Discover alleged that a mandatory arbitration provision was added to Vaden's Cardmember Agreement in 1999. *See id*. at ¶20. The Court granted Discover's motion. *See* June 2004 Opinion at p. 13.

---

[2]Vaden also filed a motion to dismiss and a motion for summary judgment on December 15, 2003 and January 12, 2004, respectively. In its June 2004 Opinion, the Court denied both motions.

The Fourth Circuit held that the Court's authority to grant Discover's motion depends upon whether the Court has subject matter jurisdiction over the parties' underlying dispute. *See Discover Bank*, 396 F.3d at 368. Vaden maintains that the Court lacks jurisdiction because her counterclaims are based solely upon Maryland law and no federal question is implicated. Discover counters that a federal question exists because Vaden's counterclaims are completely preempted by the Federal Deposit Insurance Act[3] ("FDIA").

On January 28, 2005, the Court ordered the parties to submit supplemental briefs addressing the Court's subject matter jurisdiction over the parties' underlying dispute. On April 4, 2005, Vaden moved to dismiss for lack of subject jurisdiction.

ANALYSIS

A.    Motion to Dismiss for Lack of Subject Matter Jurisdiction

When subject matter jurisdiction is challenged under Federal Rule of Civil Procedure 12(b)(1), the plaintiff has the burden of proving that subject matter jurisdiction exists. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (*citing Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)). In determining whether jurisdiction exists, "the district court is to regard the

---

[3]12 U.S.C. §1831d(a)(2005).

3

pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac*, 945 F.2d at 768 (*citing Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *Trentacosta v. Frontier Pac. Aircraft Indus.*, 813 F.2d 1553, 1558 (9th Cir. 1987)).  The district court should apply the standard used for motions for summary judgment, whereby the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists. *Id.* (*citing Trentacosta*, 813 F.2d at 1559).  "The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.* (*citing Trentacosta*, 813 F.2d at 1558).

    1.    Federal Question Jurisdiction and Complete Preemption

Although a district court may compel arbitration pursuant to Section 4 of the FAA, the FAA, alone, does not confer subject matter jurisdiction. *See Discover Bank*, 396 F.3d at 368.  The court's jurisdiction, therefore, must lie within the underlying dispute allegedly subject to arbitration. *See id.* at 369. Discover contends that the Court has subject matter jurisdiction based upon Section 27(a) of the FDIA.  Specifically, Discover argues that the FDIA completely preempts Vaden's state counterclaims.

Under the doctrine of complete preemption, a complaint

4

that alleges only state law causes of action may be removed when the state claims necessarily invoke a federal law. *See Caterpillar Inc. v. Williams,* 482 U.S. 386, 393 (1987). The complete preemption doctrine rests on the notion that "on occasion...the preemptive force of a statute is so extraordinary that it converts an ordinary state common law complaint into one stating a federal claim..." *Rutledge v. Seyfarth, Shaw, Fairweather & Geraldson*, 201 F.3d 1212, 1215 (9th Cir. 2000).

Vaden's counterclaims are based upon fees and interest rates charged on her Discover account and breach of contract. In regard to her illegal fees and interest rate claims, Vaden alleges violations of sections 12-502, 12-506 and 12-506.2 of the Commercial Law Article of the Maryland Annotated Code. *See* Counterclaim at ¶¶ 41, 47, 52. These sections regulate the assessment of finance charges and late fees and the compounding of interest upon a consumer credit card account. *See* MD CODE ANN., COM. LAW §§12-502, 12-506, 12-506.2 (2005). These provisions, however, are in stark contrast with the laws of Delaware, the state in which Discover was organized. *See* DEL. CODE ANN. tit. 5,§§ 941(8), 943, 945, 950, 952 (2005) (permits bank to charge late fees, interest and compound interest in accordance with the cardholder agreement).

Section 27(a) of the FDIA provides in pertinent part:

In order to prevent discrimination against state-

> chartered insured depository institutions...with respect to interest rates...such state bank[s]...may, notwithstanding any state constitution or statute which is hereby preempted for purposes of this section, take, receive, reserve, and charge on any loan or discount made, or upon any note, bill of exchange, or other evidence of debt, interest....at the rate allowed by the laws of the state...where the bank is located.

12 U.S.C. §1831d(a).

The United States Supreme Court has determined that sections 85 and 86 of the National Bank Act, 12 U.S.C. §§ 85, 86 (2005), completely preempt state law usury claims against national banks. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 11 (2003). Section 27(a) is the counterpart to sections 85 and 86. *Cross-Country Bank v. Klussman*, No. C-01-4190, 2004 U.S. Dist. LEXIS 7835, at *15 (N.D. Cal. Apr. 30, 2004). Courts, therefore, have held that Section 27(a) should be construed in *pari materia* with sections 85 and 86. *Hill v. Chemical Bank*, 799 F. Supp. 948, 951-52 (D. Minn. 1992) ("Generally, similar language should be interpreted in the same way, unless context requires a different interpretation."). It is, after all, a general rule that when Congress borrows language from one statute and incorporates it into a second statute, the language of the two acts should be interpreted the same way. *Greenwood Trust Co. v. Massachusetts*, 971 F.2d 818, 826 (1st Cir. 1992) (*citing Morales v. TWA*, 504 U.S. 374, 384(1992)).

Vaden concedes that the FDIA completely preempts any state claims against a federally insured bank such as Discover Bank. Vaden, however, argues that because she filed counterclaims against DFS, a non-bank, the FDIA is not implicated. Looking solely at the face of Vaden's counterclaims, it appears that she is correct--Vaden's counterclaims address DFS only. However, as the Fourth Circuit noted, a determination as to whether Discover Bank, as opposed to merely DFS is a party of interest in the state law suit is dispositive. *See Discover Bank*, 396 F.3d at 373, n.3.

Vaden's counterclaims allege damages based upon improper assessment of fees and interest charges. Although Vaden's claims are against DFS only, the record clearly demonstrates that Discover Bank is the real party in interest. Vaden and Discover Bank are the sole parties to the Cardmember Agreement. *See* Ex. 1 to Pls. Opp. Mot. Dism.[4] ("Roberts Decl.) at ¶¶4,5. Discover Bank, not DFS, issues credit, establishes the terms of credit, including the interest rate and fees. *See id.* at ¶¶13, 14; *See also* Ex. 2 to Pls. Opp. Mot. Dism. ("Panzarino Decl.") at ¶¶3-5. DFS is merely a servicing affiliate of Discover Bank. *See* Ex. 1 to Pls. Opp. Mot. Dism. ("Roberts Decl.) at ¶14. As the servicing affiliate, DFS performs certain services for Discover Bank, including, but not limited to, marketing, customer service and collection services.

---

[4]All references to exhibits attached to Pls. Opp. refer to the Opposition filed in response to Vaden's 1/12/2004 motion to dismiss.

*See* Ex. C to Roberts Decl. ("First Revised Service Agreement").

Despite this evidence, Vaden maintains that whether Discover Bank is the real party in interest is irrelevant. *See* Mot. Dism. at p. 7. She suggests that as the counter-plaintiff, she may sue a party even if her claim ultimately fails. *See id.* This argument, however, is unpersuasive. The Court must look beyond Vaden's attempts to characterize her claims to avoid federal jurisdiction. *Phipps v FDIC*, 417 F.3d 1006, 1011 (8th Cir. 2005) (*quoting M. Nahas & Co. Inc. v. First Nat'l Bank*, 930 F.2d 608, 611-12 (8th. Cir. 1991)). Complete preemption applies when a party seeks recovery for excessive fees and interest of loans that were made by a national bank, even if the bank is not named as a party. *Krispin v. May Dep't Stores Co.*, 218 F.3d 919, 924 (8th Cir. 2000).

In urging the Court not to apply the complete preemption doctrine, Vaden cites cases finding complete preemption inapplicable to claims asserted against non-banks. These cases, however, are wholly inapposite. In all these cases, the Court either found that the bank was not the true lender or the allegations were not directed at the specific terms of the loan. *See Flowers v. EZPawn Okla., Inc.*, 307 F. Supp. 2d 1191, 1205-06 (N.D. Okla. 2004) (factual dispute regarding whether national bank was true lender); *Carson v. H & R Block, Inc.*, 250 F. Supp. 2d 669, 674 (S.D. Miss. 2003) (complete preemption doctrine inapplicable because plaintiff's allegations did not relate to any usurious

interest rate charge, excessive fee or other alleged national bank violation); *Goleta Nat'l Bank v. Lingerfelt*, 211 F. Supp. 2d 711, 717 (E.D.N.C. 2002) ("a sharp factual issue is presented as to whether Goleta is the real lender at issue"); *Green v. H & R Block*, 981 F. Supp. 951, 955 (D.Md. 1997) ("gravamen of all plaintiff's claims is the alleged fiduciary duty owed by defendants to plaintiff, not usury claims").

Here, it is clear that Discover Bank, not DFS, is the true lender and that Vaden's counterclaims are directed against the alleged unlawful terms of the loan, not DFS' servicing of the loan. The complete preemption doctrine, therefore, applies.

Accordingly, the Court has subject matter jurisdiction over Discover's motion to compel.[5]

B.    Motion to Compel Arbitration

The Fourth Circuit also directed the Court to reexamine whether there was a "question of material fact about the existence of an arbitration agreement". *Discover Bank*, 396 F.3d at 373, n.4. Specifically, the Court must consider whether Discover's financial records, viewed in the light most favorable to Vaden, could successfully rebut the presumption that she was subject to the amended agreement during the relevant time period. *See id.*

The Cardmember Agreement that Vaden received when she

---

[5]The Court will also exercise supplemental jurisdiction over Counts IV-VIII. *See* 28 U.S.C. §1367(a)(2005).

obtained credit with the Plaintiffs in 1990 provided that Discover could:

> change any term or part of this Agreement, including any Finance charge rate, fee or method of computing any balance upon which the Finance Charge rate is assessed, by sending you a written notice at least 30 days before the change is to become effective. Your express written agreement to any such change or the use of your Account or the Card on or after the effective date of the change means that you accept and agree to the change. We may apply any such change to the outstanding balance of your Account on the effective date of the change of terms and to new charges made after that date.

*See* Ex. 1 to Verified Complaint. ("Cardmember Agreement").

The agreement is "governed by the laws of the State of Delaware and applicable federal laws." *Id.*

In 1999, an arbitration clause was added to the Cardmember Agreement. *See* Verified Complaint at ¶¶ 18-26. The arbitration clause stated that:

> In the event of any past, present or future claim or dispute . . . between you and us arising from or relating to your Account, any prior account you have had with us, your application, the relationships which result from your Account or the enforceability or scope of this arbitration provision, of the Agreement or of any prior agreement, you or we may elect to resolve the claim or dispute by binding arbitration.
>
> IF EITHER YOU OR WE ELECT ARBITRATION, NEITHER YOU NOR WE SHALL HAVE THE RIGHT TO LITIGATE THAT CLAIM IN COURT OR TO HAVE A JURY TRIAL ON THAT CLAIM. . . . Even if all parties have opted to litigate a claim in court, you or we may elect arbitration with respect to any claim made by a new party or any new claims later asserted in that lawsuit, and nothing undertaken therein shall constitute a waiver of any rights under this arbitration

provision.

> If you do not agree to the changes, you must notify us in writing by September 15, 1999. . . . If you notify us, we will close your Account and you will pay us the balance that you owe us under the current terms of the Agreement. If you do not notify us, the changes set forth in this notice will be effective and will apply to your Account for billing[] periods beginning after September 1, 1999. Use of your Account on or after October 1, 1999, means that you accept the new terms, even if you previously notified us that you did not agree to the changes.

*See* Ex. C to Verified Complaint ("The 1999 Amendment").

In July 1999, the 1999 Amendment was sent to all eligible Platinum cardmembers. *See* Ex. 1 to Pls. Supp. Brf. ("Loeger Supp. Decl."). Thereafter, a virtually identical amendment was also sent to all "new, converted and reissued cardmembers" whose accounts were processed between July 1, 1999 and September 30, 1999 ("Fulfillment Kit Notice of Amendment"). *See id.* at ¶¶ 8-9. For those members whose accounts were converted to Platinum status, they received a Fulfillment Kit which included their Discover Platinum card, the Discover Platinum Cardmember Agreement, a form cover letter notifying them of the conversion and a notice of amendment to the Discover Platinum Cardmember Agreement adding the arbitration provision. *See id.* at ¶9.

According to Discover's records, in June 1999, Vaden received a Discover Platinum Card and notification of upgrade. *See id.* at ¶3. Discover maintains that in July 1999, Vaden received the 1999 Amendment along with her regular monthly billing statements.

*See id.* at ¶4.  Discover contends that Vaden did not opt-out of the 1999 Amendment.  *See* Verified Complaint at ¶28.  Instead, Vaden used her card until 2001, when her privileges were suspended for nonpayment.  *See* Ex. D to Verified Complaint (Vaden's Monthly Discover Card Statements for July 1999 - April 2001).

Vaden, however, argues that she is not subject to the 1999 Amendment, because she was not a Platinum Cardmember in July 1999.  *See* Def. Supp. Brf. at pp. 21-25. She claims that she would have not received the 1999 Amendment as a non-Platinum Cardmember. *See id.* Furthermore, she maintains that even if she received the 1999 Amendment, she was not bound by its terms. *See id.*  Even assuming that Vaden's assertions are correct, Vaden's claims are subject to arbitration.

Vaden bases her argument that she is not subject to the arbitration agreement upon alleged inaccuracies in Discover's financial records.  *See id.*  Vaden maintains that her card was not upgraded to Platinum status until September 1999.  *See id.* at pp. 22,23. In support, she notes that her monthly statements did not contain the "Platinum" brand until her October 1999 statement. *See id.*  She also notes that Discover's records are inaccurate because they also incorrectly note that her credit limit was increased in June 1999, rather than in May 1999.  *See id.* at p. 26. She, therefore, argues that any reliance upon Discover's financial records which indicate that she was a Platinum holder prior to

12

September 1999 is misplaced.

Vaden, however, ignores the uncontroverted evidence that Discover also amended its Cardmember Agreement, incorporating the arbitration provision, by providing Fulfillment Kits to eligible cardmembers after July 1999. If Vaden became a Platinum Cardmember in September 1999, she would have received a Fulfillment Kit containing the arbitration agreement. Discover adduces evidence that appropriate measures were taken to ensure that all eligible cardmembers received their Fulfillment Kits. *See* Ex. A to Pls. Supp. Brf. ("Loeger Suppl. Decl.") at ¶¶11-12. For example, Discover ensured that the Fulfillment Kits and all of the required materials were sent to all eligible cardmembers' billing addresses. *See id.* As the Court stated in its June 2004 Opinion, "evidence that a notice of amendment was properly mailed gives rise to a rebuttable presumption of receipt." *See* 2004 Opinion at p. 9 (*citing Kurz v. Chase-Manhattan Bank USA, N.A.*, No. 03-5678, 2004 U.S. Dist. LEXIS 9711, at *14 (S.D.N.Y. 2004). Vaden does not contend that she never received her Discover Platinum card, rather she argues that she never received the arbitration agreement. If the Platinum card was properly delivered in September 1999, then it is highly likely that Vaden would have also received the arbitration agreement.

Although Vaden submits that she did not receive an arbitration agreement, she adduces no evidence--other than her

denial--to rebut this presumption. *See Tinder v. Pinkerton Sec.*, 305 F.3d 728, 734-35 (7th Cir. 2002)(enforcing an arbitration agreement against an employee who claimed that she did not receive it). As the Court is satisfied that an arbitration agreement existed between the parties and Vaden failed to exercise her right to opt-out, her claims are subject to arbitration. Accordingly, the Court will order arbitration of Vaden's counterclaims. *See Snowden v. Checkpoint Check Cashing*, 290 F.3d 631, 634 (4th Cir. 2002)(court must order arbitration once it is satisfied that an agreement for arbitration has been made and has not been honored).

CONCLUSION

For the reasons discussed above, the Defendant's motion to dismiss will be denied and the Plaintiffs' motion to compel arbitration will be granted.


January 18, 2006                    _____/s/_____
Date                               William D. Quarles, Jr.
                                   United States District Judge